LEONARD D. CHIECHI and GERALDINE M. CHIECHI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chiechi v. Commissioner
Docket No. 561-89
United States Tax Court
T.C. Memo 1993-630; 1993 Tax Ct. Memo LEXIS 646; 66 T.C.M. (CCH) 1804; December 28, 1993, Filed *646 Decision will be entered for respondent. For petitioner: Jeffrey I. Margolis
For respondent: James D. Hill DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6659
1978
$ 4,301
$ 215
--
--
$ 1,290
1979
4,093
205
--
--
1,228
1980
5,813
291
--
[1]
1,744
1981
17,212
--
$ 861
[1]
5,164
After concessions by the parties, the issue remaining for decision is whether petitioners are liable for an addition to tax *647 under section 6659 for a valuation overstatement for the years 1978 and 1981. Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Dale City, California, on the date the petition was filed in this case. Petitioners are individuals of limited educational and financial background. Petitioner Leonard D. Chiechi is a press room superintendent at the James H. Barry Company. Petitioner Geraldine M. Chiechi is a housewife. Neither petitioner attended school past the 12th grade. From 1956 until 1981, petitioners' tax returns were prepared by Philip Nabhan, a certified public accountant and a trusted friend of the family. In 1981, Mr. Nabhan contacted petitioners and informed them that he was retiring and selling his accounting practice. One of the two partners that was purchasing Mr. Nabhan's accounting practice was Harold Coffin. Harold Coffin, unbeknownst to petitioners, was also a sales representative for Structured Shelters, Inc. In the beginning, Structured Shelters was a tax shelter that purportedly offered investments in commercial buildings and master recordings. *648 At a reception for the new partners sponsored by Mr. Nabhan, petitioners learned of Structured Shelters from Harold Coffin. Since the late 1970s, petitioners had been interested in retirement investments, and were informed by Harold Coffin that a Structured Shelters investment could provide long-term financial security. Originally, petitioners were only interested in investing in the commercial buildings. However, when the commercial building investment never materialized because of concerns about violations of securities law, with the encouragement of Harold Coffin, petitioners became interested in investing in a master recording. Prior to investing in a master recording, petitioners spoke to Mr. Nabhan about whether such an investment would be advisable. Mr. Nabhan, who apparently also invested, convinced petitioners that the master recording investment offered by Mr. Coffin was the type of long-term retirement investment that they were looking for. Based on Mr. Nabhan's recommendation, petitioners decided to invest in a master recording. Petitioners received a list of different master recording subjects. They chose to lease a children's master recording because they concluded *649 that a children's master recording was less trendy and would have more long-term selling potential. In December of 1981, petitioners signed a lease with Oxford Productions for 85 percent of a children's master recording entitled "Playhouse Presentation of All About Magic People Volume I". Petitioners raised the $ 10,625 necessary for the investment through a loan from Beneficial Finance Company. The master recording petitioners invested in was valued at $ 250,000, and petitioners, as 85 percent investors, claimed a basis in the recording of $ 212,500. Petitioners' 1981 Federal income tax return prepared by Mr. Coffin's firm reflected the $ 212,500 value and corresponding investment tax credits. Unused investment tax credits were carried back to prior years. The specific features of the master recording investment plan and the assets petitioners believed they were investing in are described in detail in , a consolidated test case. In Rybak v. Commissioner, we disallowed all credits and deductions relating to the master recordings, finding that the plan was a sham without economic substance. *650 Integral to and inseparable from that finding was the conclusion that the master recordings were overvalued. . Petitioners have not agreed to be bound by the decision in Rybak, nor have they conceded that their investment was similar to those in Rybak, as respondent has argued. Yet, petitioners have not introduced evidence which could lead us to a different conclusion. Petitioners also have not conceded that their investment lacked economic substance, but similarly declined to litigate this issue. In light of our previous opinions, petitioners have conceded that the section 6653 addition to tax for negligence and the section 6621(c) increased interest due to a tax motivated investment are applicable. In respondent's notice of deficiency, she disallowed petitioners' deductions and credits relating to their master recording investment plan because, among other reasons, the transaction lacked economic substance. The only issue for decision before us is whether petitioners are liable for the addition to tax under section 6659 for an overvaluation. Section 6659 imposes a graduated addition to tax on individuals *651 whose underpayment of tax is attributable to a valuation overstatement and is equal to or exceeds $ 1,000. Sec. 6659(a), (d). A valuation overstatement arises on any return where the value on the return is 150 percent or more of the amount determined to be the correct amount of such valuation. Sec. 6659(c)(1). If the valuation claimed exceeds 250 percent of the correct valuation, the addition is equal to 30 percent of the underpayment attributable to the valuation overstatement. Sec. 6659(b). Where there is a lack of economic substance, section 6659 is applicable because the taxpayer's correct basis in the asset is zero. , affg ; . Because the correct basis in the asset is zero, any basis claimed in excess of zero is a valuation overstatement. , affg. ; ; . *652 Therefore, the adjusted basis of the asset claimed on the taxpayers' returns exceeds the corrected adjusted basis, which is $ 0, by more than 250 percent. Respondent disallowed the deductions and credits relating to petitioners' investment because the transaction lacked economic substance. It is petitioners's burden to prove that respondent's determination is in error. Rule 142(a); . Petitioners have not done that here. Accordingly, we must conclude that the transaction lacked economic substance and therefore, petitioners are liable for the section 6659 addition to tax. . Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩